## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| **IKORONGO TEXAS LLC and** | § | |
| **IKORONGO TECHNOLOGY LLC.,** | § | |
| | § | |
| **Plaintiffs,** | § | **Case No. 6:20-cv-00843-ADA** |
| | § | |
| **v.** | § | |
| | § | |
| **UBER TECHNOLOGIES, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFFS' OPENING CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................... 1

II.  OVERVIEW OF PATENTS-IN-SUIT ............................................................... 2

III. CLAIM CONSTRUCTION ANALYSIS ........................................................... 3

A.   The Asserted Claims ................................................................................... 3

B.   Disputed Terms ........................................................................................... 4

   1.   "computer usage experiences" ('543 Patent, claim 32) (requested by Plaintiffs; not briefed in other cases) ................................................................................ 4

   2.   "visited geographic location data" ('543 Patent, claims 32, 54, 57, 70; '704 Patent, claims 33, 36, 38, 46 and 48) (requested by Defendant; not briefed in other cases) .............. 6

   3.   "record[s/ed]" ('543 Patent, claims 32, 54, 57; '704 Patent, claims 33, 46, 48) (requested by Defendant; briefed in other cases) ................................................................. 8

   4.   "list[s]" ('543 Patent, claims 32, 54, 57, 70; '704 Patent, claims 33, 34, 39-41, 46, 48) (requested by Defendant; not briefed in other cases) ......................................................... 9

   5.   "definition of [access] rights of the one or more [buddies/other users]" ('543 Patent claims 32, 54; '704 Patent claims 33, 46, 48) (requested by Defendant; briefed in other cases) ........................................................................................ 11

   6.   "according to the access rights defined for the one or more other users" ('543 Patent, claim 57, 70) (requested by Defendant; briefed in other cases) .......................................... 13

   7.   "detection network directory" ('704 Patent, claims 33, 46, 48) (requested by both parties; briefed in other cases) ................................................................. 13

   8.   Whether the Preambles of the '704 Patent, Claims 46 and 48 are Limiting (requested by Plaintiffs; briefed in other cases) .................................................................. 15

IV.  CONCLUSION.............................................................................................. 16

## **TABLE OF AUTHORITIES**

**Cases**

*Avid Tech., Inc. v. Harmonic, Inc.*,
    812 F.3d 1040, 1045 (Fed. Cir. 2016)..................................................................9

*Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*,
    55 F.3d 615, 620 (Fed. Cir. 1995)....................................................................15

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
    289 F.3d 801, 808 (Fed. Cir. 2002)..................................................................16

*Karlin Tech. Inc. v. Surgical Dynamics, Inc.*,
    177 F.3d 968, 971-72 (Fed. Cir. 1999) ............................................................12

*Phillips v. AWH Corp.,*
    415 F.3d 1303, 1312, 1323 (Fed. Cir. 2005) (*en banc*) ..................................5,8

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
    378 F.3d 1396, 1410 (Fed. Cir. 2004)..............................................................12

*Shoes by Firebug LLC v. Stride Rite Children's Grp., LLC*,
    962 F.3d 1362, 1367 (Fed. Cir. 2020).........................................................15,16

*Tandon Corp. v. U.S. Int'l Trade Comm'n*,
    831 F.2d 1017, 1023 (Fed. Cir. 1987)..............................................................12

*Thorner v. Sony Computer Entm't Am. LLC*,
    669 F.3d 1362, 1365 (Fed. Cir. 2012)................................................................5

Plaintiffs Ikorongo Texas LLC and Ikorongo Technology LLC ("Ikorongo") submit their opening claim construction brief for RE 45,543 (the '543 Patent) (Ex. 1)[1] and RE 47,704 (the '704 Patent) (Ex. 2) (collectively the "Patents-in-Suit").

The Patents-in-Suit are asserted in four additional suits pending before this Court: *Ikorongo v. Bumble Trading LLC* (6:20-cv-00256-ADA), *Ikorongo v. LG Electronics Inc. et al.* (6:20-cv-00257-ADA), *Ikorongo v. Lyft, Inc.* (6:20-cv-00258-ADA), and *Ikorongo v. Samsung Electronics Co., Ltd. et al.* (6:20-cv-00259-ADA).   The claim construction briefing is completed and the *Markman* is set for April 1, 2021 in those cases.

## I.    INTRODUCTION

The Patents-in-Suit generally relate to methods and apparatus for selectively sharing certain information with selected users, including sharing of location information from a location aware device (e.g., a smartphone) that was collected via a client-side application.

As demonstrated below, Ikorongo's constructions mostly adopt the plain and ordinary meaning of the claim terms.   Where a construction is provided by Ikorongo, it aligns with the intrinsic evidence.   In contrast, Uber Technology, Inc. ("Uber") has adopted many of the same positions taken by the Bumble/LG/Lyft/Samsung defendants, seeking to import limitations into the claims in furtherance of litigation-induced non-infringement positions and not in concordance with the claim language or other intrinsic evidence.   In other instances, Uber offers conflicting definitions from the other defendants, demonstrating the weakness of all defendants' constructions. In the end, Uber's proposed constructions are improper, and likely to confuse, rather than assist, a lay jury as they inject ambiguity.

Finally, while Uber purported to assert various grounds of invalidity under 35 U.S.C. §112(2) in its invalidity contentions, Uber has now waived and/or abandoned any defense under §112(2).   Uber originally proposed several terms be construed during the *Markman* process as

---

[1] Unless otherwise noted, all exhibits are attached to the Declaration of Howard Wisnia submitted with this brief.

allegedly indefinite, but withdrew those terms, and has failed to timely propose any other terms as allegedly indefinite.

## II.    OVERVIEW OF PATENTS-IN-SUIT

Both Patents-in-Suit are reissues of U.S. Patent No. 7,080,139 (the '139 Patent) (Ex. 3). The '139 Patent was filed on April 24, 2001, issued on July 18, 2006, and is entitled "Method and Apparatus for Selectively Sharing and Passively Tracking Communication Device Experiences." RE 41,450 (the '450 Patent)[2] is a reissue of the '139 Patent, filed as Reissue Application No. 12/172,518 on July 14, 2008 (within two years of the issuance of the '139 Patent).  The '543 Patent was filed as Reissue Application No. 13/894,009 on May 14, 2003 and is a part of a line of continuations back to the '450 Patent.  Similarly, the '704 Patent was filed as Reissue Application No. 14/577,746 on December 19, 2014, and is a part of a line of continuations back to the '450 Patent.

The Patents-in-Suit provide the following general overview:

> A common theme among aspects of the present invention is collecting data regarding a user's computer usage experience and sharing that data.  So-called "buddies" identified on buddy lists of instant messaging products can share selected aspects of their computer usage experiences.    Administrative tools and processes can be provided to set up selective collection and sharing of data.  Collection tools and processes operate on a variety of computer usage activities and user responses to their computer usage experiences.  Processing tools and methods filter, integrate and correlate the collected data.  Display tools and processes make portions of the data accessible on a pre-defined basis.  Such as according to defined rights of buddies.  Aggregation tools and processes assemble statistics about user experiences across different bases, such as buddy lists, categories of users, and all service participants.

Ex. 1, '543 Patent, 2:45−60.[3]

---

[2] RE 41,450 is not asserted in this action, but is asserted in the LG and Samsung cases.
[3] Because the Patents-in-Suit share a common specification, citations will be to the '543 Patent, unless otherwise noted.

Certain embodiments are described with reference to a "visited location database ('VLD') 100B." *Id.* at 3:27–28.  Among other described features, "the VLD also could store geographic information regarding the location, such as geo-coded data," visited by a location-aware device. *Id.* at 3:44–46.  An access control list or "ACL" also can be maintained.  Among other described features, an ACL may be used to identify buddies and control their access to visited geographic location data stored in the VLD.  *Id.* at 4:4–7.  The Patents-in-Suit provide a detailed description of how "[a] user could set up his or her own ACL via buddy list and access control list administration functions." *Id.* at 4:7–8.  In various embodiments, the ACL and VLD interoperate to enable a user to control who may have access to geographic information visited by the user's location-aware device.

## III.   CLAIM CONSTRUCTION ANALYSIS

### A.  The Asserted Claims

The presently asserted claims of the Patents-in-Suit across all cases are as follows:

| Party | '543 Patent Asserted Claims | '704 Patent Asserted Claims |
|---|---|---|
| Uber | 32, 36, 38, 54, 57, 63, 64, 66, 68–70 | 33–36, 38–41, 45–48 |
| Lyft | 32, 36, 38, 54, 57, 63, 64, 66, 68–70 | 33–36, 38–41, 45–48 |
| Bumble | 39, 43–46, 55–57, 63, 64, 66, 68–71 | 33–38, 45–47 |
| Samsung/LG | 32, 36, 38, 39, 43–49, 51, 54, 56, 72, 73, 75 | 33–40, 45–48 |

Exemplary asserted claim 32 of the '543 Patent reads as follows, with disputed terms bolded:

> 32.  A computer-implemented method of sharing **computer usage experiences**, including:
>
> sending registration information of a user to a registration server to collect and share **visited geographic location data** using a client-side application while visiting geographic locations with a location-aware device that **records** the visited geographic locations using a satellite-based location fixing protocol;
>
> enabling access to one or more messaging buddy **lists** of the user to identify one or more buddies with whom visited geographic location data may be shared;

enabling **definition of rights of the one or more buddies** to access the visited geographic location data; and

sending information indicating at least a portion of the visited geographic location data to a tracking server to enable sharing of the information with the one or more buddies in accordance with the defined rights.

Exemplary asserted claim 46 of the '704 Patent reads as follows, with disputed terms bolded:

46. **A non-transitory computer-readable medium storing software for instructing a controller of a location-aware cellular phone device that is configured for being registered with a registration server to:**

enable access to one or more **lists** of other users to identify one or more other users with whom **visited geographic location data** is to be shared;

enable **definition of access rights for the one or more other users** to enable access to the **visited geographic location data**;

collect the **visited geographic location data** for geographic locations visited by the location-aware cellular phone device using a client-side application, the visited geographic location data comprising a plurality of the geographic locations visited by the location-aware cellular phone device, each geographic location visited time-stamped with a time of visit, the geographic locations visited automatically and passively recorded by the location-aware cellular phone device using a satellite-based location-fixing protocol and a **detection network directory**; and

report information indicating the visited geographic location data to a tracking server.

### B. Disputed Terms

1. **"computer usage experiences" ('543 Patent, claim 32) (requested by Plaintiffs; not briefed in other cases)**

| Ikorongo's Proposed Construction | Uber's Proposed Construction |
|---|---|
| Plain and ordinary meaning, including but not limited to visiting geographic locations with a location-aware device that records the visited geographic locations | Plain and ordinary meaning |

This term was not briefed in the Bumble/LG/Lyft/Samsung cases. The dispute arose in the context of Uber's motion to dismiss asserting that the Patents-in-Suit are invalid as failing to meet the "Original Patent" requirement. Dkt. No. 27. Specifically, Uber asserts that the original '139

Patent was allegedly directed to sharing of computer usage experiences, but the Patents-in-Suit are allegedly directed to entirely different subject matter. *Id.* at 3-7, 8-17. In making this argument, Uber wrongly asserts that the '543 Patent, claim 32 (and other claims) do not relate to computer usage experiences because "visiting geographic locations with a location-aware device that records the visited geographic locations" as recited in the '543 claim 32 is allegedly not a computer usage experience.

Ikorongo's opposition demonstrates that Uber's motion fails for a variety of reasons, one of which is that visits to locations with a location aware device are "computer usage experiences." Dkt. No. 31 at 2-7, 10-13, 19. Both the original patent and the Patents-In-Suit included visiting a location as a type of computer usage experience, at least because Claim 32 of the asserted '543 and Claim 32 of the '139 Patent describe "computer usage experiences" that include visiting a location. *Id.* at 8-19.

"The claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*). "The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). There are only two exceptions to the general rule that claims are given their ordinary and customary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution." *Id.*

Uber ignores this controlling law. While both parties agree the term should take its plain and ordinary meaning, Uber wrongly seeks to narrow that meaning by asserting that plain and ordinary meaning excludes visiting locations with a location-aware device that records the visited locations. Yet the specification, the '139 Patent claims and the '543 patent claims compel otherwise.

5

Here, the claim language itself supports Ikorongo's position.  The '543 Patent claim 32 (much like original patent '139 claim 32) recites a "computer-implemented method of ***sharing computer usage experiences***, including: sending registration information of a user to a registration server to collect and ***share visited geographic location data using a client-side application while visiting geographic locations with a location-aware device that records the visited geographic locations*** . . ."[4]

Moreover, Original Patent '139 claim 1 (of which the '543 Patent is a reissue) makes the point even more clearly.  Claim 1 provides that "visiting a location with a location-aware device that records the visited location" is a computer usage experience:

> A method of ***sharing computer user experiences . . . wherein the computer usage experiences include one or more of*** browsing URLs or ***visiting a location with a location-aware device that records the visited location***.

Thus, the plain and ordinary meaning of "computer usage experiences" includes "visiting locations with a location-aware device that records the visited locations."  There is nothing in the specification or prosecution history that compels or even suggests a different result.

### 2. "visited geographic location data" ('543 Patent, claims 32, 54, 57, 70; '704 Patent, claims 33, 36, 38, 46 and 48) (requested by Defendant; not briefed in other cases)

| Ikorongo's Proposed Construction | Uber's Proposed Construction |
|---|---|
| Plain and ordinary meaning. | "information reflecting a location that is pre-defined for experience collection, stored in a database and that a user has visited" |

Uber requested construction of this term.  The term was originally raised, but later dropped, by Bumble, LG, Lyft, and Samsung, with all parties in those cases recognizing that the term takes its plain and ordinary meaning.

Uber's construction ignores *Thorner* and unabashedly seeks to add extraneous and inappropriate limitations that are not compelled by the patents' claim language, specifications, or

---

[4] Unless otherwise noted, all emphasis is added throughout this document.

prosecution history. Uber wrongly demands that the data "reflect a location that is pre-defined for experience collection," and be "stored in a database and that a user has visited."

Uber's position is at odds with the claims and specification. Nowhere are these additional limitations required in the claims. For example, '543 claim 57 recites a "method of operating a server computer comprising . . . receiving information indicating visited geographic location data[,]. . . *the visited geographic location data being data defining geographic locations* collected at the location-aware device[,] . . . wherein *the location-aware device records the geographic locations using a satellite-based location-fixing protocol*." Thus, the claim makes plain that the visited geographic location data concerns the geographic locations recorded using a satellite-based location-fixing protocol (*e.g.,* GPS). GPS is not limited to reflecting locations that are "pre-defined for experience collection," whatever that phraseology means. The specifications and other patent claims are not so limited either.

Other claims similarly provide that the "visited geographic location data" is "collected" by the client-side application on the location-aware device, and "reported" or "sent" to a tracking server. *See, e.g.,* '543 Patent, claim 32 and '704 Patent, claim 46.

The claims similarly do not require that "visited geographic location data" be "stored in a database," as Uber would have it. In fact, for many claims this construction would be altogether inconsistent with the specification. For example, Uber presumably is referring to the discussion of VLDs (visited locations databases) in the specification. *See, e.g.,* '543 Patent Fig. 22, item 100B; 3:28 *et seq.* The VLD is not on the client device in certain disclosed embodiments, but rather on the server side. Fig. 1, item 100. Thus, any database would likely not be on the client device side. Yet, many of the claims in which this term appears are client-side items or methods. *See, e.g.,* '704 Patent claim 48 ("A non-transitory computer-readable medium storing software for instructing a controller of a location-aware cellular phone device").

Moreover, it is unclear what Uber's construction that the data be "stored in a database" even means. Must it be stored in a database at all times? Or just at some point in time? What constitutes a "database" under Uber's proposal?

7

The specification also does not support Uber's construction.  For example, the specification describes multiple methods of obtaining location data, which do not require "pre-defined[5]" locations for experience collection: "Several equivalent methods of associating a portable device with the location are available.  Sophisticated networks may fingerprint, triangulate or otherwise locate a wireless device based on radio signal characteristics.  Sophisticated devices may include circuits that determine the device's location; these circuits may utilize GPS, DGPS, Loran or any other location fixing protocol."  *Id.* at 3:46-52.  Triangulation, Loran, or GPS data is not "information reflecting a location that is pre-defined for experience collection."  And while the specification does discuss that location information *may* be stored in a database, the claims themselves do not recite or require a "database."  *See Phillips v. AWH Corp.,* 415 F.3d 1303, 1323 (Fed. Cir. 2005) ("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments").

Uber's construction is wrong, too limiting and injects ambiguity and confusion into an otherwise easily understood term.  Accordingly, Ikorongo asserts that the plain and ordinary meaning should be adopted.

### 3.    "record[s/ed]" ('543 Patent, claims 32, 54, 57; '704 Patent, claims 33, 46, 48) (requested by Defendant; briefed in other cases)

| Ikorongo's Proposed Construction | Uber's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | "preserve[s/d] for later reporting or sharing" |

Uber requested construction of this term and offers the same inappropriate construction as Bumble, LG, Lyft and Samsung.  Ikorongo proposes its same construction as in those cases.

Defendant's construction ignores controlling law and seeks to unduly limit the claim terms and inject ambiguity into otherwise clear term "record" – which may confuse a lay jury or allow an expert to "interpret the interpretation" in an unfounded manner.

---

[5] In fact, it is unclear what Uber means by pre-defined in its constructions.  Ikorongo does not take a firm position on the meaning of that term in the context of the constructions at this time.

For example, '543 Patent claim 32, recites "a location-aware device that **records** the visited geographic locations using a satellite-based location fixing protocol . . ." '543 Patent at 22:1-3 (emphasis added).  The ordinary and customary meaning of "records" does not require preserving *for later reporting*.  *See, e.g.,* Ex. 4, (dictionary definition of "record" as simply "to put data into a storage device.").  While, of course, the ordinary meaning of record is broad enough to include preserving for later reporting, it is not so limited.  Rather, the ordinary meaning of record is broad enough, for example, to include (1) data that may be recorded and never reported, (2) data reported concurrent with recording, and 3) data reported after the recording.  Neither the claim language nor the ordinary meaning of the claim term supports Uber's proposal.

Next, the specification does not redefine "record" in some manner different from the plain and ordinary meaning, or require that "record" mean preserve for later reporting.  Instead, the specification provides examples of recording without reporting.  *See, e.g.,* '543 Patent at 6:46-48 ("activity may still be recorded to a tracking server . . . **but not reported**.").  Thus, the specification refutes Uber's proposed construction.

The Prosecution history does not compel Uber's construction.  Prosecution history disclaimer requires clear and unmistakable disavowal.  *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016) ("[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable").  Uber has identified no such disavowal.

**4. "list[s]" ('543 Patent, claims 32, 54, 57, 70; '704 Patent, claims 33, 34, 39-41, 46, 48) (requested by Defendant; not briefed in other cases)**

| Ikorongo's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "names (plural) written or displayed consecutively" |

This term was not in dispute in the Bumble/LG/Lyft/Samsung cases.  Ikorongo submits the plain and ordinary meaning is appropriate for this easily understandable term.  Uber's proposed construction wrongly injects unsupported limitations into an otherwise clear term.

9

The term appears in the claims in the broader phrases "messaging buddy lists," "lists of other users," "contact list," and "email contact list of a user."

First, Uber's construction wrongly demands that a "list" must contain plural entries. The plain and ordinary meaning of "list" does not support Uber's position. For example, when a person first downloads a messaging app, the "buddy list" feature of the app is unpopulated until a user adds one or more buddies.

Moreover, the specification directly contradicts Uber's position by describing embodiments in which the "buddy list" includes **one or** more buddy: "**one or** more instant messaging contact links." '543 Patent at 8:14-23. The specification expressly describes "logic for editing entries in the buddy list" where there is only one buddy on the list: "If a buddy has been selected, processing depends on the number of buddies in the list 1863. If there are one or fewer buddies in the last [sic, list] 1864, the system activates only the end button. If there is more than one buddy in the list 1866, the system activates edit and remove buttons. The remove button is not activated for one or fewer buddies, as ***the system requires at least one buddy in a buddy list***." *Id.* at 14:34-45.

This is consistent with the dictionary definition of "lists," which demonstrate that in computer programming, lists can contain one, or even no entries. *See* Exs. 5 and 6 (discussing "empty lists"). Thus, the intrinsic and extrinsic evidence is contrary to Uber's proposal.

Second, Uber's construction wrongly requires that the list must contain "names." In fact, the specification notes "lists" may comprise server directories, e-mail addresses, or even numbers: "In some implementations, such as an enterprise implementation, a network directory such as a Novell, NT or Windows 2000 server directory of users may be accessed instead of an instant messaging product. In other implementations, an e-mail system user directory may be accessed for users to invite. . . . For some implementations, such as AIM or Yahoo IM, the screen name may be a name. For other implementations, such as Indigo and ICO, the screen name may be a number which ties to a name, which may be locally unique or not unique at all." '543 Patent at 7:6–22. There is simply no support for Uber's proposal that the "list" be limited to "names."

Finally, Uber's proposal wrongly demands that the "list" must include entries "written or displayed consecutively."  As demonstrated above, Uber is wrong in arguing that the list must contain multiple entries.  Moreover, there is no requirement that a list be "written or displayed."  In a computer environment, it is unclear what Uber even means by "written."  Moreover, some of the claims are server-side claims (*e.g.* '543 Patent claim 57).  It would likely be nonsensical and pointless to require display of the list on a server, as there would likely be no one to view it.

Even in a client-side embodiment with lists that do contain multiple entries, there is no requirement that the entries be "written or displayed consecutively."  Although the specification allows that a list could display multiple entries, there is no requirement that it must.  For example, a list could contain multiple entries, and entries in it could be searchable, where the search only returns the entry that was entered, without the entries ever being "written or displayed consecutively."  Uber's attempts to add extraneous limitations to the straightforward and well-understood concept of a "buddy list" or "list of users" should be rejected.

Ikorongo respectfully submits that the plain and ordinary meaning should be adopted.

> ### 5.  "definition of [access] rights of the one or more [buddies/other users]" ('543 Patent claims 32, 54; '704 Patent claims 33, 46, 48) (requested by Defendant; briefed in other cases)

| Ikorongo's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | "the user to select the categories of geographic location data to be shared with other users/buddies who have been granted rights" |

The defendants in the other cases defined the broader phrase "enabling definition of rights of the one or more buddies to access the visited geographic location data" and other terms.  *See, e.g.,* Ex. 7, *Ikorongo v. Bumble,* Case:6:20-cv-00256-ADA Dkt. 53-1 (Joint Claim Construction Statement), Term 7 (listing Bumble/LG/Lyft/Samsung's proposed construction of phrases as "allow[ing] the user to grant permission for one or more [other users/buddies] to access selected categories of the visited geographic location data").

11

Ikorongo's proposed construction is the same as in the other cases.  Like the other defendants, Uber's construction seeks to impermissibly import limitations into the claims from the specification or elsewhere without sufficient justification.

First, Uber wrongly introduces a requirement of "the user to select the categories of geographic location data to be shared" - this is not required by the claim language. Indeed, while Uber has offered the same construction for a partial phrase that is worded differently in many different claims it ignores the distinction between '543 Patent claim 56 (not asserted here) and the other claims. Claim 56 expressly recites the limitation: "enable a user to define rights," while none of the limitations for the asserted claims do so.  Yet, Uber nonetheless asserts – wrongly – that "the user" must do the selection in all the claims.  Under Uber's faulty theory the recitation of "a user" in claim 56 would be superfluous, which would violate the doctrine of claim differentiation. "To the extent that the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant." *Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987); *see also See Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004) ("interpretations that render some portion of the claim language superfluous are disfavored"). Uber provides no sound basis to adopt such a disfavored construction.

Next, Uber seeks to limit the "definition of rights" to "***select[ing] categories*** of geographic location data to be shared" but the claim language, specification and prosecution history do not compel this narrowing.  Indeed, none of the asserted claims at issue for this term even recite "categories."  However, other unasserted claims – that include the exact same phrase – do expressly recite "categories."  *See, e.g.*, '543 Patent, claims 46, 58-59; '704 Patent, claims 36 and 37.  Thus, Defendants' construction would again violate the doctrine of claim differentiation, "the commonsense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope."  *Karlin Tech. Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971-72 (Fed. Cir. 1999).

The plain and ordinary meaning of these terms should control.

6. **"according to the access rights defined for the one or more other users" ('543 Patent, claim 57, 70) (requested by Defendant; briefed in other cases)**

| Ikorongo's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning. | "based on the selected categories of geographic location data to be shared with other users who have been granted rights" |

The dispute regarding this term is similar to the dispute above.  Uber seeks to limit the "access rights defined" in the same manner as above.  Again, the claims at issue (57 and 70) do not even recite "categories," while unasserted dependent claim 58 expressly recites "categories." As above, Uber's proposal violates the doctrine of claim differentiation.

The plain and ordinary meaning of these terms should control.

7. **"detection network directory" ('704 Patent, claims 33, 46, 48) (requested by both parties; briefed in other cases)**

| Ikorongo's Proposed Construction | Uber's Proposed Construction |
|---|---|
| "a network directory which reflects the location of wireless devices not solely based on cellular tower triangulation" | "third party directory that stores and provides predefined locations" |

Ikorongo's proposed construction is the same as in the other cases.  Uber's proposed construction differs from that of Bumble, LG, Lyft, and Samsung.  Those defendants proposed "third party directory that stores and provides ***the location of the location aware cellular phone,***" while Uber proposes "third party directory that stores and provides ***predefined locations.***"  Like Uber's "visited geographic location data" construction, it attempts to inject an unsupported and ambiguous "pre-defined locations" requirement.

13

The subject claim term was added by amendment.  The Applicant stated as follows:

Independent claims **33**, **46**, and **48** have been amended to recite a satellite-based location-fixing protocol and a detection network directory vs a satellite-based location-fixing protocol, thus further narrowing the scope of the claim. The "detection network directory" appears in Figure 23. In Figure 23, item 2313 is referenced as a "THIRD PARTY LOCATION DETECTION NETWORK DIRECTORY". The description of the "detection network directory" including "Third Party" is informative in the Applicants opinion because it differentiates over cell tower triangulation (which present application also covers), as a cellular service provider would not be considered a "Third Party". Figure 23 further references the "Third Party Location Detection Network Directory" in item 2356 "FATBUBBLE SYSTEM PERIODICALLY PINGS THIRD PARTY LOCATION DETECTION SERVICE FOR USER'S LOCATION INFORMATION". This is further supported by paragraph [col 3 lines 48:52]: "Sophisticated networks may fingerprint, triangulate or otherwise locate a wireless device based on radio signal characteristics. Sophisticated devices may include circuits that determine the device's location; these circuits may utilize GPS, DGPS, Loran or any other location fixing protocol ". Thomas / De Vries / Bezos are silent as to a "detection network directory".

Ex. 8, '704 Patent Prosecution History, 2/5/19 Amendment at 15.

The specification provides multiple examples of detection network directories.  For example, "[w]alking in the door of a popular restaurant, nightclub or other location could trigger an interaction between a Bluetooth device and a ***Bluetooth access point*** sponsored at the location. The Bluetooth device ***could learn the location visited*** and report the location . . ." '543 Patent at 3:32-37.  An "independent service may be used to track locations visited by user based on any of the protocols identified above or any other protocol."  *Id.* at 3:54-56.  With reference to Fig. 23, the specification states "[i]t is necessary for the user to have a wireless device 2354, which supports a location detection service.  The support may be by Bluetooth, GPS or any other location detection technology. . . A location network directory 2312 is accessible, which ***reflects*** location of wireless devices 2354 and contains information ***such as*** the devices' location address, location description, timestamp and a user ID 2358."  *Id.* at 16:56 - 17:2.

As with the specification's discussion of "visited geographic location data" the specification's disclosure of a broad array of directories does not include any discussion that locations must be "pre-defined."  The specification does not preclude that the locations could be pre-defined, it is simply not required.  Thus, Uber's proposal for this term is unsupported.

On the other hand, Ikorongo's proposed construction that includes "a network directory which **reflects** the location of wireless devices" is appropriate as it is consistent with the language is the specification.  *See* '543 Patent at 16:66–67 ("A location network directory 2312 is accessible, which **reflects** location of wireless devices . . .").  The remainder of the Ikorongo's proposed construction comes from the Applicant's clarification during prosecution that the term "differentiates over cell tower triangulation (which present application also covers) . . ."  Ex. 8, '704 Patent Prosecution History, 2/5/19 Amendment at 15.  Thus, the Applicant made clear that cell tower triangulation is included within the invention, but a detection network directory requires something further.

### 8.   Whether the Preambles of the '704 Patent, Claims 46 and 48 are Limiting (requested by Plaintiffs; briefed in other cases)

| Ikorongo's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Limiting | Not Limiting |

A "claim preamble has the import that the claim as a whole suggests for it.  In other words, when the claim drafter chooses to use both the preamble and the body to define the subject matter of the claimed invention, the invention so defined, and not some other, is the one the patent protects." *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995).  It is also well established that a preamble which provides "antecedent basis may limit claim scope because it indicates a reliance on both the preamble and claim body to define the claimed invention."  *Shoes by Firebug LLC v. Stride Rite Children's Grp., LLC*, 962

F.3d 1362, 1367 (Fed. Cir. 2020) (citing *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002)).

Here, both of the preambles at issue provide an antecedent basis for other terms in the body of the claims and thus are limiting.  For example, the preamble of '704 Patent Claim 46 states "A non-transitory computer-readable medium storing software for instructing ***a controller of a location-aware cellular phone device*** that is configured for being registered with a registration server to."  The body of the claim then recites the limitations "collect the visited geographic location data for geographic locations visited ***by the location-aware cellular phone device***" and "the geographic locations visited automatically and passively recorded by ***the location-aware cellular phone device*** using a satellite-based location-fixing protocol. . ."  It is thus clear that "the" location-aware device in the body of the claim is the one recited in the preamble, *i.e.,* "the" location-aware device that is capable of being registered with a registration server.  A similar analysis applies to '704 Patent Claim 48.

## IV.    CONCLUSION

For at least the foregoing reasons, Ikorongo respectfully requests that the Court construe the disputed terms as proposed by Ikorongo.

Dated:  March 25, 2021                              Respectfully submitted,

                                                                      */s/ Howard Wisnia*_____

                                                                      **KARL RUPP**
                                                                      State Bar No. 24035243
                                                                      *krupp@nixlaw.com*
                                                                      **NIX PATTERSON, LLP**
                                                                      Advancial Building
                                                                      1845 Woodall Rodgers Freeway, Suite 1050
                                                                      Dallas, Texas 75201
                                                                      972.831.1188 - Telephone
                                                                      972.444.0716 - Facsimile

**BRADLEY BECKWORTH**
State Bar No. 24001710
*bbeckworth@nixlaw.com*
**NICHOLAS WYSS**
State Bar No. 24071459
*nwyss@nixlaw.com*
**NIX PATTERSON, LLP**
3600 N. Capital of Texas Hwy, Bldg. B, Suite 350
Austin, Texas 78746
512.328.5333 - Telephone
512.328.5335 - Facsimile

**DEREK GILLILAND**
State Bar No. 24007239
*derek@soreylaw.com*
**SOREY, GILLILAND & HULL, LLP**
P.O. BOX 4203
109 W. Tyler Street
Longview, Texas 75601
903.212.2822 - Telephone
903.212.2864 - Telephone

**HOWARD WISNIA**
*howard@wisnialaw.com*
**WISNIA PC**
12770 High Bluff Drive, Suite 200
San Diego, California 92130
858.461.0989
howard@wisnialaw.com

***COUNSEL FOR PLAINTIFFS***

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on March 25, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Howard Wisnia*
Howard Wisnia